# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# ANDERSON DIVISION

| | |
|---|---|
| EURIDIS CASTRO, Individually and as Personal Representatives of the Estate of JULIO CESAR CASTRO PEREZ, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>BENNY G. SHELTON, individually and doing business as BENNY SHELTON TRUCKING<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Euridis Castro, individually and as Personal Representative of the Estate of her husband, Julio Cesar Castro Perez, Deceased, by and through their counsel of record, and file this Complaint for Damages, showing this Honorable Court as follows upon information and belief:

1. This is an action for wrongful death and personal injuries damages arising out of a fatal motor vehicle collision that occurred on November 18, 2017 on South Carolina Highway 121 in Saluda County, South Carolina.

2. Julio Castro Perez, a resident of Saluda, South Carolina, sustained severe personal injuries which ultimately resulted in his death as a result of a motor vehicle collision with a tractor trailer that occurred at approximately 8:03 A.M. on November 18, 2017 on South Carolina Highway 121 in Saluda County, South Carolina.

3. Euridis Castro is the surviving legal spouse of Julio Castro Perez.

4. Euridis Castro is a resident of Saluda County, South Carolina.

5. The Saluda County Probate Court has appointed Euridis Castro as Personal Representative of the Estate of Julio Castro Perez. As such, Mrs. Castro is the proper party to bring this action for damages.

6.Julio Perez Castro's wife, Euridis Castro, has lost the aid, comfort, companionship, support and society of her husband; has suffered extreme emotional distress, anxiety, grief, and sorrow, for which she is entitled to recover on behalf of the statutory beneficiaries Actual and Punitive damages (when allowed by law) pursuant to S.C. Code Annotated §§15-51-10 *et seq.,* in an amount to be determined by the jury at the trial of this action.

7.Euridis Castro also brings a Survival Action pursuant to S.C. Code Annotated § 15-5-90.

8.Defendant Benny G. Shelton ("Defendant Shelton") does business under the trade name Benny Shelton Trucking, which is a sole-proprietorship. Defendant Shelton, individually and doing business as a for-hire motor carrier under the trade name Benny Shelton Trucking, resides and operates his trucking business at 1375 Maple Swamp Road, Waynesburg, Kentucky 40489. He may be served with process at the above address. Once served, Defendant Shelton both individually and doing business as Benny Shelton Trucking, is subject to the jurisdiction and venue of this Court.

9.At all times material to the motor vehicle collision which forms the basis of this action, Benny G. Shelton d/b/a Benny Shelton Trucking, US DOT number 826233, was an interstate motor carrier authorized to operate in the State of South Carolina for profit pursuant to one or more permits to operate by the Interstate Commerce Commission, or by the United States Department of Transportation, or both.

10.The Benny Shelton Trucking logo was on both the tractor and trailer involved in the instant collision.

11.Defendant Shelton drove the tractor trailer involved in the motor vehicle collision that forms the basis of this action.

12. Pursuant to 28 U.S.C. Section 1332, this court has jurisdiction based on complete diversity of citizenship of the parties and based upon the amount in controversy exceeding $75,000.

13. Pursuant to 28 U.S.C. Section 1391 and Local Civil Rule 3.01(A)(1), venue is proper in the Anderson Division of the United States District Court, District of South Carolina, as a substantial part of the events giving rise to this lawsuit occurred in Saluda County.

**Facts**

14. Plaintiffs incorporate and reiterate all above paragraphs as if set forth fully verbatim herein.

15. On November 18, 2017 at approximately 8:00 A.M., Julio Castro Perez ("Mr. Castro") drove a 2009 Honda Civic owned by his wife, Euridis Castro. Prior to the fatal crash, Mr. Castro drove the Civic West on Yarborough Road in Saluda, South Carolina located in Saluda County until he reached a stop sign intersection Highway 121.

16. Julio Castro Perez approached the intersection of Yarborough Road and South Carolina Highway 121 and stopped in accordance with the posted stop sign. Afterwards, Mr. Castro proceeded through the intersection and completed his left hand turn. He completed his turn and began traveling Southbound on Highway 121 in Saluda County when he was struck in his own lane of travel.

17. This collision occurred on Highway 121 in Saluda County. The stretch of highway concerned is comprised of two lanes – a northbound and a southbound lane. At the time of the collision, all four tires of Mr. Perez' vehicle were in his lane, the Southbound lane.

18. Mr. Castro acted as a reasonable and prudent driver at the time of the collision, as he was lawfully in his own lane at the time of the crash.

19. On the same date and time, Defendant Shelton drove the above-referenced tractor trailer under the trade name Benny Shelton Trucking and under the motor carrier operating

3

authority of Benny Shelton doing business as Benny Shelton Trucking as he traveled northbound on South Carolina Highway 121.

20. The road conditions at the time were clear and dry, and it was daylight at the time of the acts and omissions complained of.

21. As he traveled Northbound on Highway 121, he had a clear view of the intersection with Highway 121 for over 500 feet.

22. For reasons yet to be fully identified, as Defendant Shelton approached Yarborough Road, he crossed the double yellow line, entered Mr. Castro's lane, and smashed into the front driver's side of Mr. Castro's vehicle.

23. Julio Castro Perez suffered severe trauma and was crushed inside of the Castro vehicle, where he suffered a horrific and painful death.

24. Post-crash inspection of the tractor and trailer revealed tractor and trailer brakes that fell below minimum safety standards.

25. Had Defendant Shelton, individually and doing business as Benny Shelton Trucking performed a proper visual inspection, the tractor **and** the trailer would have been placed out of service.

26. Had Defendant Shelton, individually and doing business as Benny Shelton Trucking performed a proper measurement of the brakes, the tractor **and** trailer would have been placed out of service.

### For a First Cause of Action
### (Defendant Shelton's Negligence)

27. Plaintiffs incorporate and reiterate all above paragraphs as if set forth fully verbatim herein.

28. At all times material hereto, Defendant Shelton was a professional driver with a Class A commercial driver's license. As a motor carrier Defendant Shelton d/b/a Benny Shelton Trucking

also entrusted the tractor and trailer to himself.

29.     At all relevant times, Defendant Shelton operated the tractor and trailer in the course and scope of his employment with the motor carrier Benny G. Shelton d/b/a Benny Shelton Trucking. Defendant Shelton held himself out to the public as an employee of Benny Shelton Trucking as evidenced by the logo emblazoned on the tractor and trailer he drove.

30.     At all relevant times, Defendant Shelton, individually and doing business as Benny Shelton Trucking drove a commercial motor vehicle in interstate commerce and was subject not only to South Carolina traffic laws and trucking safety regulations, but also the Federal Motor Carrier Safety Regulations.

31.     Defendant Shelton was negligent in the operation of the tractor-trailer he was driving in at least the following ways:

(a)     In operating the truck in a negligent and unsafe manner;

(b)     In choosing to drive his tractor trailer in the wrong lane of travel;

(c)     In failing to perform adequate pre trip safety inspections;

(d)     In performing a pre-trip safety inspection but choosing to drive a commercial vehicle with defective brakes;

(e)     In failing to properly and safety maintain his commercial motor vehicle;

(f)     In failing to properly and safely maintain the brakes on his commercial motor vehicle;

(g)     In failing to invest time and money necessary to maintain the brakes on his commercial motor vehicle;

(h)     In choosing to travel at a high rate of speed despite traffic around him;

(i)   In choosing to travel at a high rate of speed despite approaching an intersection ahead;

(j)   In failing to maintain a proper and diligent lookout;

(k)   In failing to maintain control of his vehicle;

(l)   In failing to travel at a reduced speed in accordance with the intersection ahead and the slowed traffic around him;

(m)   In failing to perceive and react to the traffic around him appropriately;

(n)   In driving too fast for conditions;

(o)   In failing to apply his brakes in a timely manner;

(p)   In failing to sound his horn to warn of his looming approach;

(q)   In driving while tired, distracted or otherwise not fully alert to the hazards around him;

(r)   In choosing to pay attention to his passenger, phone or other in-cabin distractions versus the road ahead of him;

(s)   In failing to maintain one set of accurate logs;

(t)   In failing to maintain pre-trip inspection logs;

(u)   In failing to maintain accurate and truthful pre-trip inspection logs;

(v)   In failing to use that degree of care and caution that a reasonable person would under the same or similar circumstances;

(w)   In driving a motor vehicle in such a manner as to indicate a willful, wanton, reckless, grossly negligent, and careless disregard for the safety of others in violation of S.C. Code Ann. Section 56-5-2920, constituting negligence *per se*;

6

(x) In driving a commercial motor vehicle in violation of Federal Motor Carrier Safety Regulations, which violations constitute negligence *per se*; and

(y) Otherwise failing to act reasonably and prudently as a professional commercial driver under the circumstances;

(z) In any such other particulars as the discovery process or the evidence at trial may show.

32. Defendant Shelton negligently, carelessly and recklessly breached the duties owed to Julio Castro Perez and violated the laws intended to protect against and prevent crashes with fellow motorists like him.

33. As a direct and proximate result of Defendant Shelton's negligent, grossly negligent, negligent *per se*, careless, reckless, and willful, wanton acts and omissions, Julio Castro Perez sustained serious personal injuries and burns which ultimately resulted in his untimely death, rendering his wife and widow and depriving his three children of their loving father.

34. As a direct and proximate result of the negligence, gross negligence, negligence *per se,* carelessness, willful and wanton acts and omissions of Defendant Shelton, Julio Castro Perez's beneficiaries, his wife and three minor children, have suffered one or more of the following losses:

(a) Mental shock and suffering;

(b) Wounded feelings;

(c) Grief and sorrow;

(d) Grief and sorrow in knowing that her husband and their father suffered a horrific death;

(e) Loss of companionship;

7

(f) Loss of the love, companionship, affection, society and affection of her husband and their father.

(g) Economic loss due to the loss of earnings and financial support Mr. Perez provided to his family.

35. In addition, as a direct and proximate results of the negligence, gross negligence, negligence *per se,* carelessness, willful and wanton acts and omissions of Defendant Shelton, prior to his death Julio Castro Perez suffered one or more of the following:

(a) physical pain;

(b) disfigurement;

(c) physical suffering;

(d) mental anguish;

(e) emotional distress for his own well-being;

(f) pre-impact fear, shock and disbelief that the tractor trailer would travel into his lane;

(g) sadness at the prospect of so abruptly leaving his wife and three minor children.

36. Due to the negligent, grossly negligent, negligent *per se,* careless, reckless, willful and wanton acts and omissions of Defendant Shelton as set forth above, Plaintiff is entitled to recovery of actual and punitive damages against Defendant Shelton as determined by a jury.

**For a Second Cause of Action – Negligence of the motor carrier, Benny Shelton doing business as Benny Shelton Trucking**

37. Plaintiff incorporates all previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

38. At all times material hereto, Defendant Shelton was an employee or agent of Benny G. Shelton doing business as Benny Shelton Trucking, acting within the scope and course of his employment or agency.

39. 49 CFR Section 390.11 provides that whenever a duty or prohibition is imposed on a driver, it is the duty of the motor carrier to require observance of such duty or prohibition. This applies even when the motor carrier is a driver.

40. In applying for and being granted permission to operate as a motor carrier from the Federal Motor Carrier Safety Regulation, Benny Shelton d/b/a Benny Shelton Trucking agreed and swore an oath to take on separate and distinct duties as a motor carrier.

41. Defendant Shelton doing business as Benny Shelton Trucking failed to use reasonable care as evidenced by his failure to comply with federal and/or state regulations and industry standards as a motor carrier.

42. Defendant Shelton doing business as Benny Shelton Trucking is liable for the negligent actions and omissions of Defendant Shelton pursuant to the doctrine of *respondeat superior* and the law of agency.

43. As an employer and a motor carrier, Defendant Shelton doing business as Trucking was also independently negligent in hiring, training, entrusting, supervising, and retaining Defendant Shelton in connection with his operation of a commercial motor vehicle and for otherwise failing to act as a reasonable and prudent trucking company under the same or similar circumstances.

44. Defendant Shelton doing business as Benny Shelton Trucking was at all relevant times a duly authorized motor carrier as defined by the Federal Motor Carrier Safety Regulations and was

engaged in interstate commerce.  As such, Defendant Benny G. Shelton d/b/a Benny Shelton Trucking was at all relevant times subject to the Federal Motor Carrier Safety Regulations.

45. As a motor carrier, Defendant Shelton doing business as Benny Shelton Trucking had certain duties and responsibilities as defined by the Federal Motor Carrier Safety Regulations and industry standards, including the duty to properly qualify Defendant Shelton, the duty to properly train Defendant Shelton, the duty to supervise the hours of service of Defendant Shelton, the duty to properly maintain his vehicles, including leased vehicles, the duty to entrust a tractor and trailer only to those capable and qualified of handling a dangerous instrumentality, and the duty to otherwise establish and implement necessary management controls and systems for the safe operation of its commercial motor vehicles.

46. Defendant Shelton Trucking violated the above-mentioned duties and responsibilities and was therefore independently negligent, negligent *per se,* careless, reckless, willful and wanton in one or more of the following ways:

    (a) In having no regular maintenance schedule for its tractors or trailers;

    (b) In failing to train, monitor and supervise Defendant Shelton on a proper pre-trip and post-trip inspection;

    (c) In failing have in place a schedule or system for periodic tractor and trailer maintenance and inspection;

    (d) In failing to have a qualified person check its tractor and trailer for safe brakes;

    (e) In choosing to place a tractor and trailer with unsafe brakes on the public highways;

    (f) In failing to remove a tractor and trailer with unsafe brakes from the highways;

    (g) In failing to ensure that Defendant Shelton drove a tractor trailer with working brakes;

(h)     In choosing to dispatch Defendant Shelton to drive on the public highways despite knowing the brakes were defective and unsafe;

(i)     In failing to have in place any rule, guideline, procedure or safeguard prohibiting the use of handheld mobile devices while operating a commercial motor vehicle;

(j)     In negligently hiring Defendant Shelton;

(k)     In failing to ensure that Defendant Shelton was qualified to drive a commercial motor vehicle;

(l)     Because as a motor carrier, Defendant Shelton d/b/a Benny Shelton Trucking knew or reasonably should have known that Defendant Shelton was untrained, unskilled, incapable and/or unqualified to drive a commercial motor vehicle, yet permitted him to drive a commercial motor vehicle;

(m)     Because as a motor carrier Defendant Shelton d/b/a Benny Shelton Trucking knew or reasonably should have known that Defendant Shelton was incapable of complying with the Federal Motor Carrier Safety Regulations and state law, and was therefore, a negligent, grossly negligent, negligent *per se,* and reckless driver;

(n)     In entrusting a tractor and trailer to Defendant Shelton when as a motor carrier, Defendant Shelton d/b/a/ Benny Shelton Trucking knew or reasonably should have known that he was incompetent, unskilled, untrained or otherwise unable to drive a commercial motor vehicle in a reasonably safe manner;

(o)     In failing to verify that Defendant Shelton operated the aforementioned equipment in a reasonably safe manner and abided by all laws governing safe operation of commercial motor vehicles;

(p)      In failing to properly train and instruct its driver(s) on safe driving, trip planning and routes;

(q)      In negligently supervising Defendant Shelton;

(r)      In negligently entrusting a tractor and trailer to Defendant Shelton;

(s)      In failing to randomly test or provide reasonable suspicion testing to Defendant Shelton to ensure that he did not get behind of the wheel after drinking or ingesting other intoxicating substances;

(t)      In failing to implement and enforce safety management systems;

(u)      In failing to implement and enforce safety management controls to monitor and supervise drivers and ensure not only timely but safe deliveries;

(v)      In failing to appropriately monitor and manage Defendant Shelton's hours of service;

(w)      In failing to have in place safety management systems to detect driver violations of the hours of service;

(x)      In failing to appropriately monitor and manage Defendant Shelton's driving practices;

(y)      In failing to have in place safety management systems to monitor and manage a driver's driving practices;

(z)      In having a negligent mode of operation that created a danger to all motorists around its commercial vehicle drivers;

(aa)      In any such other particulars as the discovery process or the evidence at trial may show.

47. As a motor carrier, Defendant Shelton doing business as Benny Shelton Trucking had exclusive possession, control and use of the tractor and trailer involved in this collision.

48. As a motor carrier, Defendant Shelton, individually and doing business as Benny Shelton Trucking, carelessly and recklessly breached the duties owed to Julio Castro Perez and violated the laws intended to protect against and prevent crashes with fellow motorists like him.

49. As a direct and proximate result of the negligence, gross negligence, negligence *per se,* recklessness and willful wanton actions and inactions of Defendant Shelton, individually and doing business as Benny Shelton Trucking in the above-referenced ways, Julio Castro Perez sustained serious personal injuries which ultimately resulted in his death.

50. For these reasons, Defendant Shelton, individually and doing business as Benny Shelton Trucking is liable, jointly and severally, to Euridis Castro for all damages allowed by law for the injuries, damages, and losses sustained by Plaintiff in this case, in an amount deemed appropriate by the jury.

51. For the reasons cited above and more still yet to be discovered, Defendant Shelton, individually and doing business as Benny Shelton Trucking committed acts and omissions were willful, wanton, and demonstrated that entire want of care which raises the presumption of a conscious indifference to consequences.

52. For the reasons cited above and more still yet to be discovered, the conduct of Defendant Shelton, individually and doing business as Benny Shelton Trucking constituted a conscious disregard for the life and safety of Julio Castro Perez, and for the lives and safety of the motoring public in general, and therefore both Defendant is liable to the Plaintiff for exemplary, or punitive damages.

53. Mrs. Castro, the Plaintiff, would further show that the acts and omissions Defendant Shelton d/b/a Benny Shelton Trucking and its agents, were committed knowingly, willfully, intentionally with actual awareness, and with the specific and calculated intent of enriching the Defendant at the expense of the Plaintiff's beloved husband and the motoring public. Mrs. Castro seeks recovery of punitive damages to punish Defendant Shelton individually and his business of Benny Shelton Trucking for such unconscionable misconduct and to deter such actions and omissions in the future by them and others in their industry.

**WHEREFORE,** Plaintiff prays that the following relief be granted:

(a) A trial by jury;

(b) For Summons and Complaint to issue against the Defendants;

(c) For judgment against the Defendant – for his actions as a driver and for his actions and omissions as a motor carrier - to compensate Plaintiffs for their pain and suffering, past, present, and future;

(d) For all damages permitted under South Carolina law arising from the wrongful death of Julio Castro Perez;

(e) For all such other economic and non-economic losses as may be shown at the hearing of this matter to the full extent allowed under South Carolina law;

(f) That Plaintiff obtains judgment against the Defendants in an amount determined to be fair and reasonable in the minds of a fair and impartial jury;

(g) Punitive damages be recovered in an amount the jury believes to be just, fair and equitable, given the facts and issues in this case;

(h) Court costs, discretionary costs, and prejudgment interest; and

(i)    For all such further and general relief which this Court deems just and proper, whether in law or in equity.

                          **MCWHIRTER, BELLINGER & ASSOCIATES, P.A.**

                          s/Melissa Garcia Mosier
                          Melissa G. Mosier
                          Federal ID Number 11000
                          119 E. Main Street
                          Lexington, South Carolina 29072
                          Telephone:    803-359-5523
                          Facsimile:    803-996-9080
                          E-mail:         melissam@mcwhirterlaw.com

January 28, 2019

Lexington, South Carolina

15